# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PLYMOUTH ROCK MANAGEMENT COMPANY OF NEW JERSEY, *et al.,* | Civil Action No. 2:23-cv-04253 |
| Plaintiffs, | Hon. Michael E. Farbiarz, U.S.D.J. |
| vs. | Hon. Cathy L. Waldor, U.S.M.J. |
| | **Return Date: December 4, 2023** |
| EQUIFAX INFORMATION SERVICES, LLC, | |
| | ORAL ARGUMENT REQUESTED |
| Defendant. | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

RIKER DANZIG LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Tel.: (973) 538-0800

Attorneys for Plaintiffs,
Plymouth Rock Management
Company of New Jersey, et al.

Of Counsel and on the Brief:
    Peter M. Perkowski Jr.

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ..................................................................................4

ARGUMENT ......................................................................................................8

I.     PLAINTIFFS ALLEGE A COGNIZABLE CLAIM FOR BREACH OF CONTRACT...................................................................................................8

     A.     Motion to Dismiss Standard..................................................................8

     B.     Plaintiffs' Complaint Meets this Standard. .........................................9

II.     PLAINTIFFS HAVE PROPERLY ALLEGED BREACH OF CONTRACT NOTWITHSTANDING THE CONTRACT'S PURPORTED DISCLAIMERS AND LIMITATIONS OF LIABILITY.............................11

     A.     Plaintiffs Adequately Allege Breach Of The Parties' Contract. .........11

     B.     Under New York Law, Equifax's Contractual Disclaimers Do Not Insulate It When the Conduct Alleged Was Willful, Reckless, or Grossly Negligent...............................................................................15

     C.     The Sole Remedy Provisions Of The Contract Do Not Foreclose Plaintiffs From Pursuing Damages. ...................................................24

CONCLUSION ..................................................................................................28

## TABLE OF AUTHORITIES

**Cases**                                                 **Page(s)**

1SChrystie Mgt. LLC v. ADP, LLC,
   205 A.D.3d 418 (N.Y. App. Div. 2022) ............................................................26

Abacus Federal Savings Bank v. ADT Security Services, Inc.,
   18 N.Y.3d 675 (2012) ..........................................................................18, 19, 20

Ashcroft v. Iqabal,
   556 U.S. 662 (2009) ............................................................................................10

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007) ............................................................................................10

Bencoe Exporting & Importing Co. v. McGraw Tire & Rubber Co.,
   212 A.D. 136 (N.Y. App. Div. 1925) .................................................................12

Cayuga Harvester v. Allis-Chalmers Corp.,
   95 A.D.2d 5 (N.Y. App. Div. 1983) .............................................................26, 27

Credit Suisse First Bos. v. Utrecht-Am. Fin. Co.,
   80 A.D.3d 485 (N.Y. App. Div. 2011) ...............................................................13

DynCorp v. GTE Corp.,
   215 F. Supp. 2d 308 (S.D.N.Y. 2002) ...............................................................23

Empire One Telecommunications, Inc. v. Verizon New York, Inc.,
   888 N.Y.S.2d 714 (N.Y. Sup. Ct. 2009) ...........................................................20

Gross v. Sweet,
   49 N.Y.2d 102 (1979) .........................................................................................16

GSCP VI Edgemarc Holdings, L.L.C. v. ETC Northeast Pipeline,
   LLC, 2023 N.Y. Misc. LEXIS 9628 (N.Y. Sup. Ct. Oct. 14, 2023) .................27

Guidotti v. Legal Helpers Debt Resol., L.L.C.,
   716 F.3d 764 (3d Cir. 2013) ...............................................................8, 9, 10, 28

Hoe v. Sanborn,
   21 N.Y. 552 (1860) .............................................................................................13

In re Ins. Brokerage Antitrust Litig.,
  618 F.3d 300 (3d Cir. 2010) .................................................................9

Internationale Nederlanden (U.S.) Capital Corp. v. Bankers Trust Co.,
  261 A.D.2d 117 (N.Y. App. Div. 1999) .............................................20

Jeffries v. Willow Woodworking, Inc.,
  40 Misc. 3d 1205, 975 N.Y.S.2d 366 (N.Y. Sup. Ct. 2013)..............13

Kalisch-Jarcho, Inc. v. City of New York,
  58 N.Y.2d 377 (1983) ..................................................................16, 20

Kourtides v Weather Shield Mfg.,
  132 A.D.3d 636 (N.Y. App. Div. 2015) .............................................27

Lago v. Krollage,
  78 N.Y.2d 95 (1991) ..........................................................................16

Lino Del Zotto & Son Builders Inc., v. Colombe,
  216 A.D.2d 778 (N.Y. App. Div. 2015) .............................................13

Matter of Part 60 Put-Back Litigation,
  36 N.Y.3d 342 (2020) ..................................................................22, 26

Metropolitan Life Ins. Co. v. Noble Lowndes Int'l,
  84 N.Y.2d 430 (1994) ........................................................................23

Morgan Stanley & Co. v. Peak Ridge Master SPC Ltd.,
  930 F. Supp. 2d 532 (S.D.N.Y. 2013) (Equifax Br. )........................23

Natixis Real Estate Capital Trust 2007-HE2 v Natixis Real Estate
  Holdings, LLC, 149 A.D.3d 127 (N.Y. App. Div. 2017)...................13

Roberts v. Weight Watchers Int'l, Inc., 217 F. Supp. 3d 742 (S.D.N.Y.
  2016), aff'd, 712 Fed. Appx. 57 (2d Cir. 2017) ................................14

S.A. De Obras y Servicios v. Bank of Nova Scotia,
  126 A.D.3d 582 (N.Y. App. Div. 2015) ........................................21, 22

S.A. De Obras y Servicios v. Bank of Nova Scotia,
  170 A.D.3d 468 (N.Y. App. Div. 2019) ........................................21, 22

Sommer v. Federal Signal Corp.
    79 N.Y.2d 540 (1992) ..............................................................................17, 18, 20

Williamsburg Food Specialties, Inc. v. Kerman Protection Systems,
    Inc., 204 A.D.2d 718 (N.Y. App. Div. 1994) ....................................................20

**Rules**

Rule 12(b)(6) .............................................................................................................8, 9

## PRELIMINARY STATEMENT

Plaintiffs Plymouth Rock Management Company of New Jersey ("Plymouth Rock") and several affiliated insurance companies ("Plaintiff Insurance Companies," and collectively, with Plymouth Rock, "Plaintiffs") respectfully submit this brief in opposition to Defendant Equifax Information Services, LLC's ("Equifax") motion to dismiss Plaintiffs' Complaint alleging breach of contract.

The Court should deny Equifax's motion. Equifax seeks to avoid clear liability for providing what it admits were erroneous Insight Score for Insurance ("ISI") scores that it knew Plymouth Rock relied on in calculating premiums for automobile insurance customers, which ultimately disrupted Plaintiffs' business and caused significant monetary damages and adverse regulatory consequences. Compounding the problem was that Equifax ignored information provided to it by Plymouth Rock that the scores appeared to be improper, blithely informing Plymouth Rock that there was "nothing to be concerned about".

The underlying facts are straightforward. Equifax contracted to provide Plymouth Rock with ISI scores for consumers who applied to the Plaintiff Insurance Companies for automobile policies. After using Equifax's ISI scores for 16 months, Plaintiffs detected possible errors with the scores and informed Equifax. Based on Equifax's assurances that there were no errors and the scores were correct, Plaintiffs continued to use the scores to determine the premiums charged to thousands of

policyholders.  Almost five months after being alerted to an error by Plaintiffs, Equifax finally realized that the ISI scores had been defective all along, but willfully and knowingly withheld that information from Plaintiffs, who continued to purchase and utilize the product. Equifax delayed reporting known errors to Plymouth Rock for an additional two months, and then failed to provide information requested by Plymouth Rock necessary to remediate the issue, causing continued damage to Plaintiffs.

These delays prevented Plaintiffs from timely addressing the errors in their rating of insurance consumers and in determining the appropriate, legally regulated premiums to charge for their insurance policies.  The delays also caused millions of dollars of loss to Plaintiffs in undercharged insurance premiums, refunds of overcharged premiums, and other expenses incurred as a result of Equifax's errors.

Plaintiffs sued Equifax to recover damages for contractual breach.  The Complaint alleges in sufficient detail facts giving rise to the cause of action, and speaks specifically to Equifax's willful, reckless, or grossly negligent conduct in failing to timely correct its erroneous scores and notify Plaintiffs of its error.  Thus, Plaintiffs' pleading satisfies the "notice" standard under the federal rules.

Nevertheless, Equifax moves to dismiss on the ground that the Complaint fails to state a claim upon which relief may be granted.  Equifax asserts two arguments in support of its motion.  First, Equifax argues that Plaintiffs' complaint does not

identify a specific contractual provision it is alleged to have breached. This argument is without merit. Equifax ignores the plain language of the Complaint and the implied covenants that inhere under governing New York law to every contract for the sale of products or services. The Complaint quotes the express representations Equifax breached regarding the quality of its ISI product. The Complaint further alleges that these provisions were breached causing damages when Equifax: 1) failed to correct the inaccuracies in the scores after Plaintiffs specifically provided Equifax with notice of the defects; 2) falsely informed the Plaintiffs that its program was scoring properly; 3) intentionally hid the errors from Plaintiffs for months after discovering and correcting the errors internally; and 4) failed to provide information necessary to remediate the issue. While these allegations easily plead a cause of action for breach of contract, New York law also recognizes that every contract for the sale of goods or services includes an implied covenant that the goods or services are not defective. Thus, Plaintiffs' Complaint sufficiently places Equifax on notice of the express and implicit provisions that it breached.

Second, Equifax seeks to escape liability by relying upon provisions in the parties' contract that purportedly limit Equifax's liability and compensable damages that Plaintiffs may seek. The Court should also reject this argument. Well-settled New York law – which Equifax's brief conveniently ignores almost entirely – holds

that the limitations provisions of the contract are *not* enforceable to protect Equifax against allegations of willful, reckless, or grossly negligent conduct.  That is precisely the type of conduct that Plaintiffs allege occurred here.  The detailed factual recitation in the Complaint regarding Equifax's failure to uncover and timely correct the defects in its scoring, and its willful conduct in hiding the defects once discovered, are sufficient for the case to proceed to discovery.

Accepting as it must the Complaint's factual allegations as true, it is clear that Plaintiffs satisfy the legal elements of a viable cause of action.  For these reasons, the Court should deny Equifax's motion to dismiss the Complaint.

## STATEMENT OF FACTS

The Complaint alleges that Plaintiff Plymouth Rock manages the operations of Plaintiffs High Point Property & Casualty Insurance Company, Palisades Insurance Company, Palisades Safety and Insurance Association, and Teachers Auto Insurance Company of New Jersey, and that Plymouth Rock is also affiliated with Plaintiff Mt. Washington Assurance Corporation.  Compl. ¶ 12.  The five Plaintiff Insurance Companies offer personal automobile insurance policies in New Jersey and four other Northeastern states.  Compl. ¶ 14.  Plymouth Rock is authorized to enter into contracts with third parties in support of the Plaintiff Insurance Companies' operations.  Compl. ¶ 13.

Plaintiff Insurance Companies are regulated by insurance departments of the States in which they offer policies.  Compl. ¶ 15.  Their rating plans and the premiums they charge are calculated and controlled by factors that must be approved by the State regulators.  Compl. ¶ 16.  Plaintiff Insurance Companies use customers' credit scores as a material component in rating applicants and policyholders and in calculating the premiums they charge.  Compl. ¶ 17.  Any change in their rating plans and premium rates must be approved by the State regulating agencies.  Id.

Defendant Equifax markets and sells consumer credit information to insurance companies, including a product called Insight Score for Insurance ("ISI").  Compl. ¶¶ 18, 21.  ISI supplements traditional credit score reports by identifying consumers' payment practices on utility, telecommunications, and similar bills that are not included in standard credit reporting.  Compl. ¶ 22.

In 2010, Equifax and Plymouth Rock's predecessor, High Point Safety and Insurance Management Corporation, entered into a written "Agreement for Services (Insurance)," which the Complaint designates as the Contract in this case.  Compl. ¶ 23.  Thereafter, the Contract was amended in writing by Equifax and Plymouth Rock on six dates from January 4, 2013 through May 3, 2018.  Compl. ¶ 24.

By Amendment of June 1, 2016, Equifax agreed to provide Plaintiffs with ISI scores for prospective and existing policyholders in exchange for a fee paid by Plaintiffs for that service.  Compl. ¶ 26.  That amendment states: the "scoring

algorithms [Equifax] used in the computation of the [ISI] Scores . . . are demonstrably and statistically sound methods of rank ordering candidate records from the Equifax consumer credit database for the purposes for which the Insurance Score Information Services were designed particularly, and each is intended to be 'an empirically derived, demonstrably and statistically sound credit scoring system.'"  Compl. ¶ 27.

The Complaint alleges that, in providing credit reporting services, Equifax knew or should have known that accurate credit scores were critical for correct rating of Plaintiffs' policyholders under State insurance regulations, and that inaccurate data could result in overcharging or undercharging consumers for insurance policies. Compl. ¶ 19.  The Complaint further alleges that inaccurate credit data would have adverse consequences for Plaintiffs and cause them losses in the form of refunds of overcharged premiums, loss of revenue from undercharged premiums, and regulatory fines.  Compl. ¶¶ 19-20.

Plaintiffs received and used the ISI scores beginning in March 2017.  Compl. ¶ 28.  Fifteen months later, Plaintiffs reviewed the performance of the ISI variables received from Equifax and discovered inconsistency between those scores and scores used in modeling Plaintiffs' own calculations.  Compl. ¶¶ 30-31.

In July 2018, Plaintiffs notified Equifax of the discrepancy in the scores it was providing and suggested to Equifax that the scores were flawed.  Compl. ¶ 32.  In

September 2018, Equifax advised Plaintiffs that it conducted an internal analysis, and asserted there were no errors in the ISI product.  Compl. ¶ 33.

Seven months after Plaintiffs alerted Equifax of the discrepancies in its ISI scores, and five months after Equifax denied any error, Equifax finally notified Plaintiffs that it had in fact uncovered an internal error in its ISI program as a result of an inquiry from another customer.  Compl. ¶ 35.  Equifax stated it had discovered and corrected the error in its program on December 20, 2018.   Compl. ¶ 37.  But Equifax failed to provide notice of the error or notify Plaintiffs of its correction until February 20, 2019, two months after it discovered the flaw, knowing all the while that Plaintiffs continued to use the incorrect ISI scores to rate customers.  Compl. ¶ 35.

Then, despite representing that it would share with Plaintiffs the results of its internal analysis on the impact of its errors, Equifax failed to provide further information throughout the rest of February and March 2019, thus preventing Plaintiffs from determining the extent of incorrectly rated insurance policies and thereby delaying Plaintiffs' ability to file accurate reports with State insurance regulators regarding remediation.  Compl. ¶¶ 40-42.  Equifax's delays in correcting the defect in its program and in notifying Plaintiffs of the errors caused Plaintiffs substantial losses in undercharged premiums, refunds of overcharged premiums,

cancelled or non-renewed policies, declined policies, and fees paid to Equifax for a defective product.  Compl. ¶¶ 43-46.

The Complaint alleges that Equifax breached the Contract in providing inaccurate ISI scores. Compl. ¶ 49.  Further, the Complaint alleges that Equifax acted willfully, knowingly, recklessly, and grossly negligently in that it had prior notice in July 2018 of the defect in its ISI program but failed to conduct an appropriate review, falsely informed Plaintiffs that its program was scoring properly, failed to inform Plaintiffs promptly of the error after discovering and correcting it internally, and then denied Plaintiffs of information necessary to remediate the error.  Compl. ¶ 50. Equifax's willful, knowing, reckless, or grossly negligent conduct in refusing to acknowledge the defect and then delaying notification of critical information that was necessary for Plaintiffs to fulfill their regulatory obligations constituted a breach of Equifax's contractual obligations to Plaintiffs.  Compl. ¶ 48-51.

## ARGUMENT

## I.   PLAINTIFFS ALLEGE A COGNIZABLE CLAIM FOR BREACH OF CONTRACT.

### A.   Motion to Dismiss Standard.

In assessing the sufficiency of a pleading under Rule 12(b)(6), a Court must "draw all reasonable inferences in the light most favorable to the non-moving party." Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 772 (3d Cir. 2013). The Court must "accept as true all allegations in the plaintiff's complaint as well as

all reasonable inferences that can be drawn from them[.]" In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 341 n.42 (3d Cir. 2010) (internal quotations omitted).

"The test in reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is whether, under any 'plausible' reading of the pleadings, the plaintiff would be entitled to relief." Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 772 (3d Cir. 2013). A claim may only be dismissed if, "accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, [the court] determine[s] that the plaintiff is not entitled to relief under any reasonable reading of the complaint." Id. at 772 (internal quotations omitted).

**B.    Plaintiffs' Complaint Meets this Standard.**

The Complaint fully satisfies the standard this Court must apply. It identifies the Plaintiffs' relationships and their insurance business, Compl. ¶¶ 10-14; the nature of the State regulations to which Plaintiffs are subject, Compl. ¶¶ 15-17; Equifax's marketing and selling of the credit information that affects compliance with State regulations, Compl. ¶¶ 18-20; a description of the ISI product, Compl. ¶¶ 21-22; the Contract between Plymouth Rock and Equifax, Compl. ¶¶ 21-25; the inclusion of Equifax's ISI product under the Contract Amendment of June 1, 2016, Compl. ¶ 26; Equifax's representation that the ISI product provided a "sound credit scoring system," Compl. ¶ 27; Equifax's knowledge of the purposes for which Plaintiffs

used the ISI product, Compl. ¶ 29; Plaintiffs' use of the product for fifteen months before they suspected the product's flaws, Compl. ¶¶ 28, 30-31; Plaintiffs' communication to Equifax of the potential defect and Equifax's ensuing assurance that its ISI product was not defective, Compl. ¶¶ 32-33; Equifax's acknowledgment seven months later that its ISI product was in fact defective, caused by a flaw in its program that Equifax had discovered two months earlier without immediately notifying Plaintiffs while knowing that Plaintiffs continued to use the incorrect insurance scores to rate customers,  Compl. ¶¶ 35-37; Equifax's subsequent failure to provide information Plaintiffs needed for compliance with State regulatory requirements in correcting the errors, Compl. ¶¶ 38-42; Equifax's actual or constructive knowledge that its conduct would cause damages to Plaintiffs, Compl. ¶ 43; and the damages caused to Plaintiffs, Compl. ¶¶ 44-46. In alleging a cause of action for breach of contract, the Complaint sets out the factual predicates for allegations that establish Equifax's willful, knowing, reckless, and grossly negligent conduct.  Compl. ¶¶ 49-50.

The legal basis of Plaintiffs' claim is not a "formulaic recitation of legal elements" of a cause of action, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); rather, it follows plausibly from the detailed factual allegations of the Complaint, all of which the Court must accept as true for purposes of the motion to

dismiss, along with reasonable inferences drawn most favorably to Plaintiffs from those facts. Ashcroft v. Iqabal, 556 U.S. 662, 678 (2009); Guidotti, 716 F.3d at 772. The facts alleged therefore are sufficient to show a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Accordingly, Plaintiffs should be permitted to develop their claims further through discovery, and the Court must deny Equifax's motion.

## II.   PLAINTIFFS HAVE PROPERLY ALLEGED BREACH OF CONTRACT NOTWITHSTANDING THE CONTRACT'S PURPORTED DISCLAIMERS AND LIMITATIONS OF LIABILITY.

The parties agree that the Contract is governed by New York law. See Declaration of Reade W. Seligmann, dated Oct. 16, 2023 ("Seligmann Dec."), Exh. 1, p.6, § VIII.8.

### A.    Plaintiffs Adequately Allege Breach Of The Parties' Contract.

Equifax contends that the Complaint should be dismissed because it does not identify any contractual provision that Equifax allegedly breached. Equifax Br. at 7. Equifax's argument ignores the clear language of the Complaint and the implied covenants that inhere under New York law to every contract for the sale of products or services.

First, paragraph 27 of the Complaint quotes the representations Equifax breached regarding the quality of its ISI product. Equifax represented that "the scoring algorithms used in computation of the [ISI] Scores are empirically derived

from consumer credit information from Equifax's credit reporting database, and are demonstrably and statistically sound methods of rank ordering candidate records from the Equifax consumer credit database for the purposes for which the Insurance Score Information Services were designed." (Compl. ¶ 27; Seligmann Dec., Exh. 4, p.2, § 2.B.2.) Equifax further represented that the ISI score report is "intended to be 'an empirically derived, demonstrably and statistically sound credit scoring system.'" (Compl. ¶ 27; Seligmann Dec., Exh. 4, p.2, § 2.B.2.)

The Complaint alleges these provisions were breached when Equifax acted willfully, knowingly, recklessly, and grossly negligently in (1) selling inaccurate ISI scores (Compl. ¶ 49), (2) failing to correct the inaccuracies in the scores after Plaintiffs in July 2018 specifically provided Equifax notice of the defects (Compl. ¶ 32), (3) falsely informing Plaintiffs that its program was scoring properly (Compl. ¶ 33); (4) concealing the errors from Plaintiffs for months after discovering and correcting the errors internally (Compl. ¶ 50); and (5) then willfully refusing to provide critical information necessary for Plaintiffs to fulfill regulatory reporting obligations and mitigate losses (Compl. ¶¶ 42, 50).

Even without explicit language representing the quality of Equifax's product and services, the Complaint appropriately states a claim for breach of contract because of the purposes for which Plaintiffs purchased the ISI credit reports and the fact that those reports proved to be defective. Under well-established New York

law, every contract for the sale of goods or services includes an implied covenant that the goods or services are as represented by the seller and not defective.  See Bencoe Exporting & Importing Co. v. McGraw Tire & Rubber Co., 212 A.D. 136, 148  (N.Y. App. Div. 1925); Hoe v. Sanborn, 21 N.Y. 552, 562 (1860).  Specifically, "there is implied in every contract for work or services a duty to perform it skillfully, carefully, diligently and in a workmanlike manner. . . . Therefore, *the absence of any express terms regarding performance of the work is not fatal*."  Jeffries v. Willow Woodworking, Inc., 40 Misc. 3d 1205, 1219, 975 N.Y.S.2d 366, 366 (N.Y. Sup. Ct. 2013) (emphasis added); Lino Del Zotto & Son Builders Inc., v. Colombe, 216 A.D.2d 778 (N.Y. App. Div. 2015).

Here, the factual allegations of the Complaint are sufficient to allege a breach of the implied covenants of the Contract.  The allegations establish that the product and services that Equifax sold to Plaintiffs contained inaccurate ISI scores and were thus defective.  As noted in Natixis Real Estate Capital Trust 2007-HE2 v Natixis Real Estate Holdings, LLC, 149 A.D.3d 127, 139 (N.Y. App. Div. 2017), an agreement that allows a party to sit on its hands and take no action when a defect or error is discovered makes no common or commercial sense, and is therefore illusory and unenforceable.  See also Credit Suisse First Bos. v. Utrecht-Am. Fin. Co., 80 A.D.3d 485, 488-89 (N.Y. App. Div. 2011) ("interpretation that renders a contract illusory and therefore unenforceable is disfavored.").

Moreover, under New York law, every contract includes an implied covenant that the seller will not continue to sell a defective product or provide flawed services once the defect or flaw becomes known to the seller.  See Hoe, 21 N.Y. at 562 (vendor liable where he had knowledge of defect and failed to disclose it).  Here, Equifax failed to acknowledge and correct the defect in its ISI program after Plaintiffs notified it of potential errors (Compl. ¶ 33).  After another customer also notified Equifax of the defect, Equifax finally corrected the flaw in its ISI program, but still left Plaintiffs in the dark for another two months about the errors in its ISI scores while Plaintiffs continued to use the product (Compl. ¶ 37).  These delays deprived Plaintiffs of the ability to make corrections for their customers, notify State regulatory authorities, and mitigate their losses.  Equifax's contractual disclaimers do not enable it to avoid liability when it knowingly continued to sell a defective product to Plaintiffs for months after Plaintiffs first communicated to Equifax that something might be awry with the ISI program.

Relying on Roberts v. Weight Watchers Int'l, Inc., 217 F. Supp. 3d 742, 752 (S.D.N.Y. 2016), aff'd, 712 Fed. Appx. 57 (2d Cir. 2017), Equifax may contend that it had no obligation to remedy the defective ISI scores it supplied to Plaintiffs.  In Roberts, the plaintiff alleged that he had inadequate access and inability to utilize fully the defendant's subscription online website.  Id. at 748.  But the subscription contracts in Roberts included an express provision disclaiming that the "website will

be uninterrupted or error-free [or] *that defects will be corrected*."  Id. at 747, 752 (emphasis added).  The contractual documentation here, by contrast, contains no such disclaimer.

There is no question that Equifax was aware of its obligation to correct known defects in its credit reporting service product.  Indeed, if the contractual disclaimers truly absolved Equifax of the responsibility to correct and permitted Equifax to continue to sell a defective and useless product, then Equifax would not have belatedly rectified the situation.

### B.   **Under New York Law, Equifax's Contractual Disclaimers Do Not Insulate It   When the Conduct Alleged Was Willful, Reckless, or Grossly Negligent.**

Equifax contends that Plaintiffs' breach of contract claim is "predicated entirely on alleged incorrect ISI scores."  Equifax Br. at 11, 18.  But that assertion is belied by the factual allegations in the Complaint and refuted by well-established New York law.  In fact, Plaintiffs' claim arises from Equifax's failure to detect and correct the flaw in its ISI program that was producing incorrect ISI scores, and on Equifax subsequently failing to notify Plaintiffs promptly of the errors after it discovered them.

Equifax's failure to act reasonably and timely in correcting the flaw and in notifying Plaintiffs was more than inadvertent or even a negligent breach of contract. It was willful, reckless, or grossly negligent conduct.  Plaintiffs notified Equifax of

the potential errors long before Equifax finally took action to confirm and correct them. Plaintiffs expect that information unearthed during discovery will confirm that Equifax delayed notifying Plaintiffs of the errors to serve its own financial and business purposes, to the Plaintiffs' detriment.[1]

The Contract's disclaimers of liability, upon which Equifax so heavily relies, do not insulate Equifax from factual allegations, which must be taken as true for present purposes, of willful, reckless, or grossly negligent conduct. See Lago v. Krollage, 78 N.Y.2d 95, 99-100 (1991) (disclaimers of liability do not extend to acts that are "willful or grossly negligent"); Gross v. Sweet, 49 N.Y.2d 102 (1979) ("to the extent that agreements purport to grant exemption for liability for willful or grossly negligent acts they have been viewed as wholly void."). Indeed, New York's court of last resort, the New York Court of Appeals, has stated: "[A]n exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances. Under announced public policy, it will not apply to exemption of willful or grossly negligent acts." Kalisch-Jarcho, Inc. v. City of New York, 58 N.Y.2d 377, 384-85 (1983). The court elaborated that "an exculpatory clause is unenforceable" when the conduct alleged "smacks of

---

[1] By way of example, Plaintiffs intend to prove that Equifax's president admitted to Plymouth Rock that Equifax delayed in notifying Plaintiffs of the erroneous scores because it focused on notifying "bigger clients" first.

intentional wrongdoing . . . or, when, as in gross negligence, it betokens reckless indifference to the rights of others."  Id. at 385 (internal quotations omitted).

Here, the Complaint alleges Equifax's failure to detect and correct flaws in its ISI product, its knowledge of how the errors would damage Plaintiffs, and its subsequent actual knowledge that a significant error in fact existed.  The allegations therefore are sufficient to support a conclusion of willful, reckless, or grossly negligent indifference to Plaintiffs' contractual rights to a "sound credit reporting system." (Compl. ¶ 19-20, 29-35).

In an analogous case, the New York Court of Appeals rejected a defendant's attempt to dismiss the complaint.  In Sommer v. Federal Signal Corp. 79 N.Y.2d 540 (1992), an employee of the defendant fire alarm company mistakenly deactivated the alarm service at a high-rise building shortly before a fire started that severely damaged the building.  The trial court dismissed suit against the alarm company, citing exculpatory provisions that disclaimed liability for any losses or damages caused by performance or non-performance of obligations under the contract or by the alarm company's negligent acts or omissions.  Id. at 548-49.

On appeal, the Court of Appeals reversed, holding that "[i]t is the public policy of this State . . . that a party may not insulate itself from damages caused by grossly negligent conduct."  Id. at 554.  While the alarm company's "exculpatory and limitation of liability clauses are enforceable against claims of ordinary

negligence, those clauses cannot restrict [its] liability for conduct evincing a reckless disregard for its customers' rights." Id.  Ultimately, the Court rejected the trial court's dismissal of claims against the alarm company at an early stage of the proceedings, concluding that whether the employee's conduct in disconnecting the service was "a simple mistake or reckless indifference [was] for a jury to determine." Id. at 555.

Equifax attempts to avoid these tenets of New York law by recasting Plaintiffs' Complaint as breach of contract based only on incorrect ISI scores. Tellingly, Equifax relegates to a footnote on the final page of its brief any discussion related to the notion that its own conduct was, under the circumstances, willful, reckless, or grossly negligent.  Equifax Br. at 20 n.5.  But as discussed above, the allegations of the Complaint go well beyond incorrect ISI scores.

Plaintiffs' allegations are akin to those in Abacus Federal Savings Bank v. ADT Security Services, Inc., 18 N.Y.3d 675 (2012), where the New York Court of Appeals reversed the grant of a motion to dismiss, finding the complaint to "sufficiently allege conduct on the part of the defendants that, if true, constitutes gross negligence."  Id. at 683.  In that case, the plaintiff bank suffered losses in an overnight burglary and sued defendants alleging that the security system they had installed was "woefully inadequate."  Id. at 681.  As here, the bank also alleged that defendants "knew for weeks, if not months" that the security system was flawed and

not working, but defendants failed to investigate the malfunctions, and also failed to notify the plaintiff of the problem although defendants knew it existed.  Id.  The Court rejected the lower court's conclusion that the bank's allegations amounted to claims of ordinary, not gross, negligence, and were barred by the disclaimers and liquidated damages provision of the contract.  Id. at 682.  In addition, the Court noted that the bank's complaint alleged "the type of conduct that smacks of intentional wrongdoing and evinces a reckless indifference to the rights of others."  Id. at 684.

Likewise, the Complaint here equally reflects the same reckless indifference to Plaintiffs' rights and interests.  The Complaint alleges that Equifax learned about the potential flaw in its ISI program at least as of July 2018, and yet continued to supply incorrect ISI scores to Plaintiffs for another five months (Compl. ¶ 32-33), whereupon Equifax admitted that it discovered the error and then failed for another two months to inform Plaintiffs (Compl. ¶¶ 37, 50), and then willfully refused to provide information necessary for Plaintiffs to mitigate damages and fulfill regulatory reporting obligations (Compl. ¶¶ 42, 50).  Furthermore, Equifax knew that Plaintiffs operate in a highly regulated industry and that the premiums they quoted and charged to consumers were subject to oversight by State insurance regulators (Compl. ¶ 20).  Equifax knew or should have known that supplying incorrect ISI scores to Plaintiffs would cause them substantial losses (Compl. ¶ 19).  Thus, it was vital that Equifax act swiftly and forthrightly in correcting any flaws in

the product it was selling to Plaintiffs and in keeping Plaintiffs apprised of any defect in that product. Its failure to do so constitutes either willful wrongdoing or reckless or grossly negligent conduct that supersedes the disclaimer and limitation of liability provisions of the parties' Contract. See Internationale Nederlanden (U.S.) Capital Corp. v. Bankers Trust Co., 261 A.D.2d 117, 122 (N.Y. App. Div. 1999) (acknowledging that gross negligence shown where defendant knows that even minor errors could have drastic consequences).

Equifax also relies on the provisions of the Contract that exclude consequential, incidental, and similar damage claims. See Seligmann Dec., Exh. 1., p.3, § V.2, p.12, B.II, § C.4. But under controlling New York law, willful, reckless, or grossly negligent conduct that resulted in losses to Plaintiffs trumps those contractual provisions. Empire One Telecommunications, Inc. v. Verizon New York, Inc., 888 N.Y.S.2d 714 (N.Y. Sup. Ct. 2009), is instructive. Invoking Kalisch-Jarcho, 58 N.Y.2d at 384-85, and Sommer 79 N.Y.2d 540, 554, the court in Empire One held that the plaintiff's complaint sufficiently pleaded willful conduct or gross negligence to preclude enforcement of provisions limiting consequential damages. Empire One, 888 N.Y.S.2d at 721; see also Abacus Fed. Savings Bank, 18 N.Y.3d at 683 ("liquidated damages clauses in contracts are not enforceable against allegations of gross negligence"); Williamsburg Food Specialties, Inc. v. Kerman

Protection Systems, Inc., 204 A.D.2d 718 (N.Y. App. Div. 1994) (liquidated damages clause of contract not enforceable as to alleged grossly negligent conduct).

S.A. De Obras y Servicios v. Bank of Nova Scotia, 126 A.D.3d 582 (N.Y. App. Div. 2015), also supports Plaintiffs' position that Equifax's motion to dismiss should be denied. S.A. De Obras involved a contract for preparation by the defendant of a bid model for a Chilean road construction project on which plaintiffs intended to bid. Id. at 470. The defendant based its model on an inaccurate assumption, thus resulting in the plaintiffs' bid being undervalued by more than $80 million. Once the error was discovered, plaintiffs withdrew their bid and sued the defendant, seeking damages that included lost profits and other consequential damages. Id. at 470-71. The exculpatory clause of the contract limited the plaintiffs' potential damage claims to 50% of the maximum fee of $975,000 payable to the defendant, including breach resulting from negligence or willful misconduct. Id. at 469-70. The Appellate Division initially reversed the dismissal of plaintiffs' complaint pre-discovery, holding that the plaintiffs' contract-based claims of gross negligence should not have been dismissed at the pleading stage. Id. at 583. After discovery concluded, the trial court dismissed the plaintiffs' claims based on the limitation of damages clause of the contract. On a second appeal, the Appellate Division reversed, holding that summary judgment should not have been granted because the plaintiffs had raised an issue of fact as to whether the defendants'

conduct in its development of the bid model was grossly negligent.  S.A. De Obras y Servicios v. Bank of Nova Scotia, 170 A.D.3d 468, 472 (N.Y. App. Div. 2019). The court added that the plaintiffs "have sufficiently alleged that defendants' conduct evinced a reckless disregard for plaintiff's rights" to void the exculpatory provision in the contract.  Id. at 473.

The type of error discussed in S.A. De Obras mirrors the flaw in Equifax's ISI program.  Plaintiffs thus should be granted the opportunity to develop evidence during discovery of what caused the defect in Equifax's program, and what steps Equifax took to investigate and correct it both before and after Plaintiffs notified Equifax of the inaccurate ISI scores.

Equifax cites Matter of Part 60 Put-Back Litigation, 36 N.Y.3d 342 (2020), to argue that "courts must honor contractual provisions that limit liability or damages because those provisions represent the parties' agreement on the allocation of the risk of economic loss in certain eventualities."  Equifax Br. at 10.  But as discussed above, the Contract's disclaimers and limitation of remedies provisions do not relieve Equifax of its contractual responsibility to provide a defect-free product and service, or of its obligation to avoid unreasonable delay in correcting defects that come to light, especially when Plaintiffs had called the defects to Equifax's attention.

Equifax recognizes that factual allegations regarding its willful, reckless, or grossly negligent conduct are sufficient to defeat its motion to dismiss; it is no

wonder, therefore, that Equifax relegates any discussion of the issue to a single footnote.  Equifax Br. at 20 n.5.  And the cases Equifax invokes there did not address contractual language comparable to that at issue here.  For example, in DynCorp v. GTE Corp., 215 F. Supp. 2d 308 (S.D.N.Y. 2002), the court did not address allegations of gross negligence, drawing a distinction between "willful rather than involuntary" breach.  Id. at 318.  Here, however the Complaint alleges nothing to suggest that the conduct in question was "involuntary" on Equifax's part.

Likewise, in Morgan Stanley & Co. v. Peak Ridge Master SPC Ltd., 930 F. Supp. 2d 532, 545 (S.D.N.Y. 2013) (Equifax Br. at 20 n.5), the court held that a defendant's repudiation of its obligations under a contract motivated exclusively by its own economic self-interest did not amount to willful conduct or gross negligence sufficient to supersede a limitation of liability provision of the parties' contract.  The court relied on Metropolitan Life Ins. Co. v. Noble Lowndes Int'l, 84 N.Y.2d 430 (1994), but there the parties' contract excluded any claim for lost profits or other consequential damages, and provided an exception from the exclusion for willful acts or gross negligence.  See id. at 433-35.  Further, Metropolitan Life was not rendered at the pleadings stage, but rather after a full-blown jury trial that delved factually into the willfulness of the defendant's conduct.  At a minimum, Plaintiffs here are equally entitled to develop the factual record of defendant's willful, reckless, or grossly negligent conduct.

**C.**   **The Sole Remedy Provisions Of The Contract Do Not Foreclose Plaintiffs From Pursuing Damages.**

Equifax contends that the Contract provides the sole remedy for its failure to meet its obligations, and that the Contract does not permit Plaintiffs to seek money damages from Equifax.  (Equifax Br. at 14-16).  But the sole remedy provisions upon which Equifax relies do not apply to willful or reckless conduct, which the Complaint alleges.  Further, because the sole remedy provisions also fail of their essential purpose, they pose no hindrance to this case proceeding to discovery.

A close reading of the sole remedy provisions shows that they are not applicable to the allegations of Plaintiffs' Complaint.  They do not address circumstances where a flaw in Equifax's ISI program results in incorrect scores reported to Plaintiffs.  Rather, they address whether the scores that are reported *predict accurately* "the insurance risk posed by [a] consumer relative to other consumers."  Seligmann Dec., Exh. 1, p.11, B.II, § C.3.  Plaintiffs are not challenging whether the scores predict accurately. There is no question that the ISI scores were *incorrect on their face* and that Equifax knew of the erroneous scores for months prior to informing Plaintiffs.

The Insurance Score Information Services section of the Contract states that the "Score" Equifax sold to Plaintiffs "provides a statistical evaluation of certain information in Equifax's credit data files on a particular consumer, and the Score indicates the degree of insurance risk posed by that consumer relative to other

consumers in Equifax's database." Id. § C.2.  The "Release" provision in that section states that Equifax will not be liable for any damages "resulting from any *failure of a Score to accurately predict* the expected insurance loss ratio relativities of any consumer." Id. § C.3 (emphasis added).  It adds that "[i]n the event the Score was not correctly applied to the credit file by Equifax, the sole remedy of [Plaintiffs] and the sole responsibility of Equifax shall be to reprocess the credit file through the Insurance Score Information Services at no additional charge." Id.

Similarly, the June 1, 2016 Amendment states that "Equifax does not guarantee *the predictive value* of the Scores with respect to any individual," and that Equifax will not be liable for "any failure of a Score *to accurately predict the credit worthiness* of [Plaintiffs'] applicants or customers."  Seligmann Dec., Exh. 4, p.2, § 2.B.3 (emphasis added).  It further provides that "[i]n the event the Insurance Score Information Services were not correctly applied by Equifax to any credit file, Equifax's sole responsibility will be to reprocess the credit file through the Insurance Score Information Services at no additional charge." Id. (emphasis added).  In other words, the Contract's provisions apply to circumstances where the score that Equifax provides to Plaintiffs does not fulfill the purpose for which Plaintiffs will use the score – that is, to evaluate and predict the insurance risk that a consumer presents.

But Plaintiffs' claim is not merely that the product they purchased from Equifax did not perform adequately for its predictive purposes.  The Complaint

alleges that Equifax provided incorrect ISI scores and then willfully or recklessly failed to: correct the errors when they were discovered; timely notify Plaintiffs of the errors; or provide Plaintiffs with necessary information to mitigate damages and fulfill regulatory reporting obligations (Compl. ¶¶ 28-35, 42).  The sole remedy provisions do not apply to such willful conduct, as the authority cited by Equifax demonstrates.  See Matter of Part 60 Put-Back Litigation, 36 N.Y.3d 342 (2020) (sole remedy provisions apply only to gross negligence but not willful conduct); see also 1SChrystie Mgt. LLC v. ADP, LLC, 205 A.D.3d 418, 420 (N.Y. App. Div. 2022) (noting that Part 60 Put-Back did not speak to willful misconduct); Rectangle Med. Dental Payments, LLC v. Retriever Medical/Dental Payments LLC, 2023 LEXIS 23188, *5 (S.D.N.Y. Feb. 10, 2023) (same).

Furthermore, to reprocess the credit file at no additional charge to Plaintiffs would not cure the defect; it would only repeat it.   A "sole remedy" provision of a contract is not enforceable where it would fail of its essential purpose and in fact provide no remedy to the aggrieved party.  See Cayuga Harvester v. Allis-Chalmers Corp., 95 A.D.2d 5, 10-11 (N.Y. App. Div. 1983) (holding that a "limited remedy provision is enforceable unless it 'fails of its essential purpose,' that is, if it operates to deprive a party of the substantial value of the bargain").

"Ordinarily, whether circumstances have caused a 'limited remedy to fail of its essential purpose' . . .  is a question of fact for the jury and one necessarily to be

resolved upon proof of the circumstances occurring after the contract is formed." Id., 95 A.D.2d at 10-11; see also Kourtides v Weather Shield Mfg., 132 A.D.3d 636, 637 (N.Y. App. Div. 2015) (holding that the issue of whether a limited remedy has failed of its essential purpose is ordinarily "a question of fact for the jury"). "Moreover, a 'delay in supplying the remedy can just as effectively deny the purchaser the product he expected as can the total inability to repair.  In both instances the buyer loses the substantial benefit of his purchase.'"  Cayuga Harvester, 95 A.D.2d at 10-11 (quoting Chatlos Systems v. National Cash Register Corp., 635 F.2d 1081, 1085 (3d Cir. 1980)).  In this case, Equifax's intentional delay in acknowledging the flaw in its ISI program, in continuing knowingly to sell incorrect scores, and in willfully refusing to provide information necessary to mitigate losses, deprived Plaintiffs of the benefit of the bargain.  See GSCP VI Edgemarc Holdings, L.L.C. v. ETC Northeast Pipeline, LLC, 2023 N.Y. Misc. LEXIS 9628, *12 (N.Y. Sup. Ct. Oct. 14, 2023) (rejecting application of sole remedy provision, stating that "such a construction of the agreement could leave Plaintiffs with no meaningful remedy for [the Defendant]'s breach.  While [the Defendant] may seek to establish at trial that the parties intended that result, it has not carried its burden of showing at this stage that this 'sole and exclusive' remedy provision bars the [Plaintiffs'] claim as a matter of law.").

In short, the language of the sole remedy provisions in the Contract does not support a reading that encompasses all forms of breach of the Contract and does not encompass the willful or reckless conduct alleged in the Complaint.  Given that the Court must "resolv[e] all inferences in favor of the plaintiff[s]," at the motion to dismiss phase, <u>Guidotti</u>, 716 F.3d at 772, it must conclude that sole remedy provisions do not as a matter of law foreclose the allegations of breach set forth in the Complaint.  Accordingly, Equifax's motion to dismiss must be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Equifax's motion to dismiss the Complaint.

Respectfully submitted,

RIKER DANZIG LLP
Attorneys for the Plaintiffs,
Plymouth Rock Management Company
of New Jersey, et al.

By: _____
PETER M. PERKOWSKI JR.

Dated:  November 20, 2023